Filed 7/30/26  In re C.Q. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| In re C.Q., a Person Coming Under the Juvenile Court Law. | C104630 |
| EL DORADO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>L.W.,<br>        Defendant and Appellant. | (Super. Ct. No. 23JD0035) |

L.W. (mother) appeals from a series of juvenile court orders, including the order terminating parental rights and freeing C.Q. (the minor) for adoption.  Mother contends: (1) the notices for some of the hearings in this case were defective; (2) the El Dorado County Health and Human Services Agency (the agency) provided profit-focused reunification services and prevented her from attending services; (3) the agency failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; the ICWA); (4) she was deprived of a meaningful adversarial proceeding at two hearings; and (5) the record in the juvenile court and on appeal contains unreliable and fabricated documents.

We are precluded from reviewing many of mother's contentions due to her untimely appeal and failure to file an extraordinary writ petition.  Mother's cognizable claims are meritless.  The juvenile court's order terminating parental rights is affirmed.

1

Undesignated statutory references are to the Welfare and Institutions Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2023, the agency filed a section 300 petition on behalf of the then 13-month-old minor. The petition alleged the agency asked the parents about the minor's Indian ancestry and they gave the agency no reason to believe the minor is or may be an Indian child. It also stated a prior dependency petition was filed for one of the minor's half siblings "due to sexual abuse and failure to protect the minor's half sibling from the perpetrator." Father's parental rights for that half sibling were terminated "as a result of his lack of participation in Court order services and his subsequent arrest for possession for sale and transport of controlled substances."

On June 7, 2023, the agency filed a first amended petition, again stating it had no reason to believe the minor is or may be an Indian child based on its inquiry of the parents. The juvenile court held the initial hearing on June 9, 2023 (CT 91) and a jurisdiction hearing on June 30, 2023.

On July 24, 2023, the agency filed a second amended petition, alleging: (1) the parents failed to provide care to the minor due to their history of substance abuse and mother's mental health issues (§ 300, subd. (b)(1)); and (2) previous abuse of the minor's siblings demonstrated there is a substantial risk that the minor will also suffer abuse and neglect (§ 300, subd. (j)). The petition also states the parents gave the agency no reason to believe the minor is or may be an Indian child.

At the July 26, 2023 detention hearing, the juvenile court noted mother stated on the day before the hearing that she may have Native American ancestry. It ordered the minor detained from mother's custody and placed in foster care, ordered the agency to conduct a further inquiry into mother's Native American ancestry, and denied mother's

2

*Marsden*[1] motion to relieve her court-appointed counsel. After the detention hearing, the agency filed a notice of child custody proceeding for an Indian child.

The juvenile court held a jurisdiction hearing in August 2023. It accepted mother's waiver of her trial rights but continued the hearing due to insufficient notice to father.

On September 8, 2023, the juvenile court held a combined jurisdiction and disposition hearing. The agency stated the minor's grandparents and other relatives all denied having any Native American ancestry. The juvenile court adjudicated the minor a dependent child of the court, continued the minor in foster care, and ordered reunification services for both parents (the dispositional judgment). It also found the ICWA inapplicable.

Mother was present with counsel at the 12-month review hearing in November 2024. The juvenile court terminated both parents' reunification services, selected adoption as the permanent plan, and set a section 366.26 hearing for February 2025 (the setting order). In so ruling, it found by clear and convincing evidence that reasonable services were offered or provided to the parents. It also advised mother and father that they must file a petition for an extraordinary writ to preserve their right to appellate review of the setting order.

At the section 366.26 hearing, mother's counsel claimed the ICWA may apply to both parents. The juvenile court twice continued the section 366.26 hearing to address the new information and to allow time for adequate ICWA notice.

At the June 6, 2025 readiness and settlement conference, the juvenile court found the ICWA inapplicable.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); *In re Z.N.* (2009) 181 Cal.App.4th 282, 289 [*Marsden* principles apply by analogy to dependency proceedings].)

The section 366.26 hearing resumed on June 11, 2025. At the hearing, mother's counsel stated he would like to call a different half sibling of the minor's (half sibling) to testify as to his affection for the minor to establish the sibling bond. The agency raised a relevancy objection. The juvenile court asked about the schedule of half sibling's visits with the minor, and the minor's counsel responded that the visits were "occasional" and "ha[d] not been ongoing and consistent." The juvenile court made no ruling on half sibling's testimony, and mother's counsel never called half sibling to testify.

At the conclusion of the section 366.26 hearing on July 18, 2025, the juvenile court found the minor adoptable and the sibling bond exception inapplicable (the section 366.26 order).

On June 23, 2025, the agency filed a memorandum containing the White Mountain Apache Tribe's (the tribe) ICWA responses dated March 25, 2025. This set of responses consists of three one-page documents denying the parents' and the minor's membership with the tribe. On July 24, 2025, the agency filed another memorandum containing the tribe's ICWA responses dated May 6, 2025. This set of responses consists of five one-page documents also denying the parents' and the minor's membership. One of the documents in this set states in its reference line that mother's birth date is 10/1 while a different document's reference line shows her birth date as 10/3. But the body of both documents, as well as the remaining responses from the tribe, all reflect mother's birth date as 10/31.

Mother's notice of appeal states she appeals from the section 366.26 order and a section 360 order entered on July 24, 2023.

## DISCUSSION

### I. *Untimely Appeal*

Mother contends the juvenile court: (1) lacks jurisdiction because the service for the June 9, 2023 hearing was defective; (2) violated her due process rights by finding she waived her constitutional rights at the August 2023 jurisdiction hearing despite defective

4

service for that hearing; (3) deprived her of a meaningful adversarial judicial proceeding by denying her the opportunity to address her concerns of appointed counsel during the *Marsden* hearing; and (4) issued orders relying on the agency's May 2023 petition that incorrectly alleged father sexually abused one of the minor's half siblings despite the victim's attempt to correct the mistake. We lack jurisdiction to review these contentions.

We have no jurisdiction to review an untimely appeal. (*Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1396.) The first appealable order in a dependency case is the dispositional order, and any subsequent order may be appealed as an order after judgment. (§ 395, subd. (a)(1); *In re T.W.* (2011) 197 Cal.App.4th 723, 729.) "An order entered prior to disposition … is 'interlocutory and not appealable, and thus any issue pertaining to it must be raised in a timely appeal of the dispositional order.' " (*In re B.P.* (2020) 49 Cal.App.5th 886, 889.) "The time for appeal of an order made in a dependency case is 60 days from the date of the order's pronouncement in open court." (*In re A.J.* (2022) 77 Cal.App.5th 7, 16.) "[A]n unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)

Here, the juvenile court entered the dispositional judgment on September 8, 2023. Thus, any challenges to orders entered on or before September 8, 2023 had to be raised in a timely appeal from that dispositional judgment. Mother never appealed the dispositional judgment, and the deadline to do so expired long ago. The dispositional judgment is therefore final and binding and we have no jurisdiction to review it or any earlier orders.

We also dismiss mother's appeal from a section 360 order allegedly entered on July 24, 2023 because the juvenile court held no hearing and entered no order on that day.

To the extent mother contends the section 366.26 order relied on the agency's inaccurate sexual abuse allegation against father, we disagree. The May 2023 dependency petition stated a prior dependency petition was filed for one of the minor's

5

half siblings due to sexual abuse and father's failure to protect her from the perpetrator. Father lost parental rights for that half sibling because of his failure to attend court-ordered services and subsequent arrest. Nothing in the May 2023 petition alleged father sexually abused that half sibling, and mother cites nothing in the record showing the half sibling attempted to correct any mistake in the May 2023 petition.

## II.   The ICWA

Mother contends the agency failed to comply with the ICWA because: (1) it failed to provide ICWA notice to the tribe when it filed the dependency petitions in 2023; (2) the tribe's responses filed by the agency were "fabricated" because they contain inconsistent birth dates for mother and father, and included five documents when the tribe only sent three. We disagree.

The juvenile court and the agency "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

Here, the agency had no obligation to give formal notice to any tribe prior to the July 26, 2023 detention hearing because the parents gave it no reason at that time to believe that the minor is or may be an Indian child. Mother first claimed she may have

6

Native American ancestry one day before that detention hearing, after the second amended dependency petition was filed.

Mother claims the agency fabricated the tribe's responses because the agency provided five one-page documents from the tribe bearing inconsistent birth dates for mother and father, while the tribe stated it only sent three documents. But a closer examination of the record reflects that the tribe issued a set of three one-page documents on March 25, 2025, denying the parents' and the minor's eligibility for membership, and another set of five one-page documents on May 6, 2025, stating the same. Both sets of responses contain consistent birth dates for father. In the second set of responses, the tribe lists mother's birth date as "10/1" in the reference line in one document and "10/3" in another, but the body of all documents from the tribe reflect mother's birth date as 10/31. We see no evidence of fabrication.

Having rejected mother's ICWA challenges, we also reject her contention that the agency failed to make active efforts to reunify the family. "[T]he statutory 'active efforts' requirements under federal and state statute apply only to an 'Indian child' as defined by the ICWA." (*In re C.B.* (2010) 190 Cal.App.4th 102, 135.) Here, the minor has never been found to be an Indian child or eligible for enrollment in a federally recognized tribe.

### III. *Reunification Services*

Mother challenges the termination of reunification services in the setting order on the grounds that: (1) the agency prevented her from attending the reunification services; (2) her drug test results and medical reports were unreliable; (3) the agency provided services for purposes of billing instead of reunification; (4) the record contains backdated documents to cover the gaps in services; and (5) the agency made custody arrangements without court order. The setting order is not reviewable on appeal.

An order terminating reunification services and setting a section 366.26 hearing is not appealable unless a petition for extraordinary writ review substantively addressing the

specific issues to be challenged and supported by adequate record is timely filed and summarily denied. (*In re X.Z.* (2013) 221 Cal.App.4th 1243, 1248-1249, citing § 366.26, subd. (l)(1).) Failure to timely file the extraordinary writ petition "shall preclude subsequent review by appeal." (§ 366.26., subd. (l)(2).) Here, the setting order terminated mother's reunification services and set the section 366.26 hearing, and the juvenile court advised mother that she must file an extraordinary writ petition to preserve her right to review on appeal. By failing to file an extraordinary writ petition, mother is precluded from seeking review of the setting order in this appeal.

We further disregard mother's claim of irregularities in the child advocacy center investigations because it is not supported by any citation to the record. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.)

### IV.   The Sibling Bond Exception

Mother contends she was denied a meaningful adversarial section 366.26 proceeding because: (1) no attorney raised the sibling bond exception; (2) the minor's counsel agreed with the agency's relevancy objection to half sibling's testimony and minimized half sibling's relationship with the minor; and (3) all appointed counsel in this matter received compensation from the county. These contentions are meritless.

First, by mother's own account in the opening brief and as confirmed by the record, appointed counsel "offered that [half sibling] would testify to his affection for [the minor] and the sibling bond." In any event, that testimony was irrelevant because it purported to provide only half sibling's perspective. "The sibling bond exception is evaluated from the perspective of the child who is being considered for adoption, not the perspective of that child's siblings." (*In re D.O.* (2016) 247 Cal.App.4th 166, 174.)

Second, we reject mother's contention that the minor's counsel agreed with the agency's relevancy objection and minimized half sibling's relationship with the minor by characterizing his visits with the minor as occasional and not ongoing or consistent. The minor's counsel did not express her opinion on the agency's relevancy objection. She

8

described half sibling's visit schedules in response to the juvenile court's question, and mother provides no record citation showing that such characterization was inaccurate.

Finally, we disagree that the adversarial proceeding was compromised because appointed counsel received compensation from the county. The juvenile court's appointment of counsel created an attorney-client relationship between mother and appointed counsel where appointed counsel owes a fiduciary duty to mother regardless of the source of his compensation. (*People v. McKenzie* (1983) 34 Cal.3d 616, 631, abrogated on another ground by *People v. Crayton* (2002) 28 Cal.4th 346, 364-365; see *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 961 [attorneys hired by their primary clients to represent third parties owe a fiduciary duty to the third party they are retained to protect].) The same is true for father's and the minor's appointed counsel. Mother's reliance on *In re Emilye A.* (1992) 9 Cal.App.4th 1695 is misplaced. *Emilye A.* observed "the state's interest in the child's welfare may best be served by appointing counsel for the parent" and concluded "accurate and just results are most likely to be obtained" in our adversary system where, as here, "both the parent and the State acting for the child are represented by counsel." (*Id.* at p. 1710.) It makes no mention of the effect of appointed counsel's source of compensation on the adversarial proceeding.

V.   *Other Challenges to the Record*

In this section we reject mother's remaining claims of fabrication in the appellate record: (1) an addendum report dated June 11, 2025 from the agency contains signatures dated June 4, 2025, evidencing fabrication; and (2) the reporter's transcript incorrectly lists mother's appellate counsel as counsel of record for the June 11, 2025 and July 16, 2025 hearings.

Here, an examination of the challenged addendum report reflects that it was filed on June 5, 2025 for the June 11, 2025 hearing and the signatures on the report were dated June 4, 2025. The footer of the report accurately shows the June 11, 2025 hearing date. Mother appears to mistake the hearing date on the report for the date of its creation.

9

As for the reporter's transcript, the July 16, 2025 hearing transcript correctly shows Thomas Camp as mother's counsel on appeal but that Richard Johnson appeared on behalf of mother at the hearing. The cover sheet of the June 11, 2025 transcript also states Camp is mother's counsel on appeal. While the appearances section of the transcript notes "the defendant present represented by [] Camp," the transcript itself reflects Johnson stated his appearance for mother at the outset of the hearing. We find no evidence of an unreliable reporter's transcript.

**DISPOSITION**

The purported appeal from the juvenile court's section 360 order is dismissed. The juvenile court's section 366.26 order is affirmed.

/s/
MESIWALA, J.

We concur:


/s/
MAURO, Acting P. J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.